UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES,

                                                                                           19-cr-467 (PKC)

            -against-                                         OPINION AND ORDER

PROSPERO GONZALEZ,

                            Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Prospero Gonzalez filed a pro se motion for sentence reduction pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A).  (Doc 91.)  Gonzalez asserts that his medical conditions, the COVID-19 pandemic, his susceptibility to complications from a COVID-19 infection, the length of time he has served, his rehabilitation, and the harsh conditions of his confinement warrant his release.  The government opposes his application.  (Doc 93.)  For the reasons described below, Gonzalez's motion will be denied.

LEGAL STANDARD

        Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant who has exhausted all administrative remedies, a court "may reduce" the defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction."  See 18 U.S.C. § 3582(c)(1)(A)(i).  The court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" and must find that the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

1

The United States Sentencing Commission is required by statute to promulgate "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [that] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t); United States v. Brooker, 976 F.3d 228, 232 (2d Cir. 2020).  The Sentencing Commission has promulgated Guideline section 1B1.13, which applies only to motions made by the BOP – not to motions brought by defendants.  Brooker, 976 F.3d at 232, 235-36; U.S.S.G. § 1B1.13.

Accordingly, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release."  Brooker, 976 F.3d at 236.  District courts have "broad discretion" when considering compassionate release motions brought by defendants and are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them."  United States v. Amato, 48 F.4th 61, 65-66 (2d Cir. 2022); Brooker, 976 F.3d at 236-37.  "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... *alone* shall not be considered an extraordinary and compelling reason'" for sentence reduction.  Brooker, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis in original) (alteration in original).

Even upon a defendant's motion, however, district courts may still look to section 1B1.13 for guidance in exercising their discretion.  See, e.g., United States v. Rodriguez, 16-cr-07, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020); United States v. Burman, 16 cr. 190, 2021 WL 681401, at *3, 5 (S.D.N.Y. Feb. 21, 2021).  Guideline section 1B1.13 states that a court may reduce a defendant's term of imprisonment if it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any

2

other person or to the community, and (3) the reduction is consistent with the policy statement in section 1B1.13. U.S.S.G. § 1B1.13. Extraordinary and compelling reasons exist, for example, when the defendant is suffering from a "serious physical or medical condition" or "deteriorating physical . . . health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. n.1(A).

Under section 3582(c)(1)(A), extraordinary and compelling reasons are "necessary—but not sufficient—for a defendant to obtain relief." United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021). The court must also consider the applicable section 3553(a) factors, such as the nature and circumstances of the offense, the purposes of the punishment, and the Guideline sentencing range, before granting compassionate release. In other words, the section 3553(a) factors are "an alternative and independent basis for denial of compassionate release." Id. (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); see also United States v. Yancy et al., 20-4096-cr, 2022 WL 6585231, at *2 (2d Cir. Oct. 7, 2022) ("[T]he district court did not abuse its discretion in independently finding that the Section 3553(a) factors weighed against [the defendant's] release."). Accordingly, a court may deny a defendant's motion "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override . . . what would otherwise be extraordinary and compelling circumstances." United States v. Israel, 05 cr. 1039, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019).

DISCUSSION

Gonzalez was arrested in January 2019, waived indictment and on July 11, 2019, was charged in a one-count Information with conspiracy to distribute and possess with intent to distribute 400 grams and more of fentanyl in violation of 21 U.S.C. § 841(b)(1)(A). (Doc 71 ¶ 2.)

On November 6, 2019, he entered a plea of guilty to the conspiracy count pursuant to a plea agreement with a stipulated Guidelines range of 87 to 108 months' imprisonment after a safety valve adjustment. (Doc 43 at 18-19.) At sentencing on October 28, 2020, the Court adopted the stipulated Guidelines range of 87 to 108 months' imprisonment but sentenced Gonzalez principally to 48 months' imprisonment – 39 months below the bottom end of the advisory Guidelines range. (Doc 73 at 18.)

At the time of filing of the present motion, Gonzalez was incarcerated at FCI Fort Dix. He is currently incarcerated at USP Lewisburg and is scheduled for release on May 5, 2024.[1] He filed a request for compassionate release with the Warden at FCI Fort Dix in April 2022. (Doc 93 at 2 n.2.) He then filed a motion for compassionate release in June 2022. (Doc 91.) The Court concludes that because more than 30 days elapsed from his filing with the Warden, he has exhausted his administrative remedies.

Gonzalez argues he is entitled to early release or a reduction in his sentence given his medical conditions and susceptibility to COVID-19 complications, the length of time he has served, his rehabilitation, and the harsh conditions he has experienced during his incarceration. (Doc 91.) The government asserts that Gonzalez has not shown extraordinary and compelling reasons for compassionate release or sentence reduction. (Doc 93 at 2.)

---

[1] See Find an inmate, Federal Bureau of Prisons, https://www.bop.gov/mobile/find_inmate/index.jsp (last accessed Nov. 14, 2022).

I. <u>Gonzalez Has Not Shown that Extraordinary and Compelling Circumstances Warrant Compassionate Release or a Sentence Reduction.</u>

In support of his motion, Gonzalez states that he has several medical conditions that "pose complications of severe illness from a COVID-19 infection." (Doc 91 at 8.) His BMI is greater than 30, which means he is obese. (<u>Id.</u>) He states that he has a substance abuse disorder and that he "suffers from depressive disorder," which "makes him 'immunocompromised.'" (<u>Id.</u> at 10.) Gonzalez concedes that major depressive disorder does not fall under the CDC's description of "immunocompromised," but he urges the Court to "consider applicable studies from the medical community at large." (<u>Id.</u> at 11 (quoting <u>United States v. Adeyemi</u>, 470 F. Supp. 3d 489, 516 (E.D. Pa. 2020).) He offers no such studies but claims that major depressive disorder "causes stress, which impairs the immune system against viral infections, such as COVID-19." (<u>Id.</u>) Gonzalez also suffers from high blood pressure, for which he is prescribed medication. (<u>See e.g.</u>, <u>id.</u> at 12, 65, 75, 78, 81, 99.)

Additionally, Gonzalez asserts that his sex and ethnicity place him at an increased risk of severe infection. (<u>Id.</u> at 11-12.) He notes that "Black and Hispanic individuals are disproportionately affected by the virus." (<u>Id.</u> at 11.) He offers a study of patients hospitalized with COVID-19 between January 17, 2020, and July 22, 2020, showing that Black and Hispanic individuals were more likely to be hospitalized with serious infections. (<u>Id.</u> at 12.)

According to Gonzalez, the DOJ "has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an 'extraordinary and compelling' reason warranting a sentence reduction." (<u>Id.</u> at 15-16.) He argues that the DOJ issued guidance on July 28, 2020, instructing government attorneys to concede that any chronic medical condition that creates a greater risk of severe illness from

5

COVID-19 presents "extraordinary and compelling" reasons warranting compassionate release. (Doc 98 at 8-9.)

The July 28, 2020 guidance was internal DOJ guidance, and thus "the Court has no way of verifying [its] existence nor its contents." United States v. Pernell, cr. 18-518, 2022 WL 3018189, at *3 (E.D. Pa. July 28, 2022). Moreover, "regardless of the memo's content, the Court is not bound to any DOJ internal guidance. . . . In short, this alleged DOJ guidance is not the 'get out of jail free card' that [Gonzalez] envisions." See id.

Gonzalez's claim is also plainly inconsistent with the government's position in this case and in other cases decided more recently than the ones Gonzalez relies on for support. (See Doc 93); see e.g., United States v. Herring, 10 cr. 391-67, 2022 WL 633871 (S.D.N.Y. Mar. 4, 2022) (government argued defendant had not shown extraordinary and compelling circumstances, despite his mood disorder and obesity); United States v. Ovalle, 20 cr. 297, 2022 WL 1115505 (S.D.N.Y. Apr. 14, 2022) (government opposed defendant's claim that his obesity and other medical conditions, in combination with the pandemic, presented extraordinary and compelling reasons for his release).

The Court acknowledges that obesity, substance abuse disorder, mood disorders such as depression, and high blood pressure can render someone more likely to become severely ill from COVID-19.[2] And the fact that Gonzalez is male and Hispanic could make him more likely to be hospitalized or die from COVID-19. However, Gonzalez would continue to face the same elevated risk of COVID-19 complications if he were released.

---

[2] Obesity and COVID-19, Ctrs. for Disease Control & Prevention (last updated Sept. 27, 2022) https://www.cdc.gov/obesity/data/obesity-and-covid-19.html; COVID-19 and People at Increased Risk, Ctrs. for Disease Control & Prevention (last updated July 13, 2021) https://www.cdc.gov/drugoverdose/resources/covid-drugs-QA.html; People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention (last updated Oct. 19, 2022) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Gonzalez is also vaccinated and boosted, which "mitigates, though it does not reduce entirely, his risk of contracting" the virus. (Doc 93, Ex. B at 51, 107); see United States v. Serrano, 15 cr. 608-4, 20 civ. 9887, 2022 WL 1443688, at *14 (S.D.N.Y. May 6, 2022). "As several courts have concluded, the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." United States v. Jones, 17 cr. 214, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021). Though Gonzalez is not automatically ineligible for compassionate release due to his vaccination status, (see Doc 98 at 6), the fact that he has received the vaccine and booster weighs against granting his motion. Moreover, his motion states he already had the virus, but he does not assert that he suffered any severe illness or complications as a result. (Doc 91 at 22.) Thus, the Court concludes that the risks Gonzalez faces of re-infection with COVID-19 and of COVID-19 complications due to his medical conditions, sex and ethnicity do not warrant his early release.

Gonzalez further asserts that, despite several complaints to BOP medical staff, he has been "denied effective treatment" for his "severe obstructive sleep apnea" and severe pain associated with a hernia. (Doc 91 at 13-16; see also id. at 51-55.) His medical records show that prior to his incarceration he was prescribed a Continuous Positive Airway Pressure ("CPAP") machine to deliver oxygen while he sleeps. (Doc 91 at 41-42, 68-69; see also id. at 13.) He claims he has been denied access to a CPAP machine while in prison because he has been "subjugated to restrictive quarantine" and "because upon information and belief, the BOP is unwilling to schedule defendant for its own sleep apnea study" during the pandemic. (See Doc 91 at 13.) He argues this "substantially diminishes his ability . . . to provide self-care within the environment of a correctional facility." (Id. at 13-14 (quoting U.S.S.G. § 1B1.13).) He also

claims he has been "unable to schedule a surgical consult" for his hernia due to the pandemic and notes "other treatable ailments" – high cholesterol and prediabetes – that he says do not entitle him to compassionate release but "are relevant to understand the full scope of his poor health and medical needs." (Doc 91 at 14-15.)

        Gonzalez's claims are not supported by his medical records. With respect to the CPAP machine, the records indicate that his primary care provider, Geisinger Health, prescribed the machine in September 2020. (Doc 91 at 41-45.) One month later, a respiratory therapist from Geisinger reached out to Gonzalez to "see how things [were] going with [his] CPAP machine" and stated that his "compliance looks great at 73.3%." (Id. at 57.) CPAP compliance is a measurement that shows how much a patient uses their CPAP machine and how well the machine is working for that individual – insurance companies typically require a certain level of compliance in order to cover the cost of the equipment.[3]

        In December 2020, however, the Geisinger respiratory therapist informed Gonzalez that he was required to return his CPAP machine "because of his poor compliance." (Doc 91 at 47.) She explained that if he "would still like to pursue" the machine, he would need to be seen by the provider for his sleep apnea and receive a new order. (Id.) It bears noting that Gonzalez was at home between September 2020 and December 2020, presumably with access to the machine; he did not surrender to BOP custody until May 2021.

        Given Gonzalez's poor CPAP compliance prior to his incarceration, his claim that the BOP is the reason he was unable to properly treat his severe sleep apnea is unconvincing. And further, his apparent infrequent (or ineffective) use of the machine when it was available to

---

[3] See What Is CPAP Compliance?, Binson's Med. Equip. & Supplies (Aug. 3, 2021), https://www.binsons.com/blog/post/cpap-compliance; see also Medicare and CPAP Compliance, Univ. of Mich. Health, https://www.uofmhealth.org/conditions-treatments/brain-neurological-conditions/medicare-and-cpap-compliance (last accessed Nov. 14, 2022).

him belies his assertion that the BOP "substantially diminishe[d]" his ability to "provide self-care within the environment of a correctional facility." (See Doc 91 at 13-14.)

His records also suggest the BOP made efforts to provide him with a CPAP machine from the outset. Records from his physical in early June 2021, soon after he surrendered to BOP custody, indicate he had a history of CPAP use and that the BOP would obtain his records from his primary care provider. (Doc 91 at 86; Doc 93, Ex. A at 19). The records still had not been received from Gonzalez's primary care provider by October 14, 2021. (Doc 93, Ex. B at 21.) Medical records from mid-October 2021 show a new request for a "Specialty Procedure" described as an "In house" sleep study. (Doc 91 at 99.) And Gonzalez was ultimately issued a CPAP machine on July 1, 2022, after he filed his motion. (Doc 93, Ex. B at 38.) In any case, any delay he may have experienced in receiving a CPAP machine due to the pandemic does not rise to the level of an "extraordinary and compelling" reason for his early release.

Gonzalez received treatment for his other medical conditions as well. During his "Dental Health History Screen" in May 2021 soon after his arrival at Fort Dix, Gonzalez stated that he had a history of hypertension but was not on medication "due to lack of health insurance." (Doc 91 at 78, 81; Doc 93, Ex. A at 10, 14, 45.) BOP medical staff instructed Gonzalez on how to obtain medical, dental, and mental health care and prescribed him medication for high blood pressure and anxiety. (See, e.g., Doc 91 at 74, 80, 92-93, 99; Doc 93, Ex. A at 1-3, 47; Doc 93, Ex. B at 1, 3, 16.) The BOP continued to monitor and treat his conditions, including by ordering lab tests, conducting x-rays and an ultrasound for the hernia, providing medication and a back brace for his back pain, and scheduling follow-up appointments. (See e.g., Doc 91 at 60, 75, 92, 98-99; Doc 93, Ex. A at 3, 5-6; Doc 93, Ex. B at

4, 9, 11, 39, 52). Gonzalez also complained that he was not given a bottom bunk, which he requested due to his back pain, but records indicate that he had a bottom bunk at least as of July 13, 2022. (Doc 91 at 38; Doc 93, Ex. B at 52.) Accordingly, the Court concludes that Gonzalez's medical treatment while in prison has been attentive to his needs, and far from inadequate.

Gonzalez further argues that the harsh conditions at FCI Fort Dix have rendered his incarceration more punishing than the Court intended and that the "unforeseen" and "unprecedented change of circumstances" due to the pandemic are extraordinary and compelling reasons that warrant compassionate release. (Doc 91 at 17-20.) But the prison conditions Gonzalez has experienced were not unforeseen and do not represent a change of circumstances. Gonzalez was sentenced in October 2020, several months into the pandemic. At sentencing, the Court explicitly considered the pandemic and its impact on incarcerated individuals. (Doc 73 at 14-15.) If anything, Gonzalez's circumstances changed for the better once the vaccines became available.

Even if Gonzalez had endured unexpectedly harsh conditions, the "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release." United States v. Hatcher, 18 cr. 454-10, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) (citing United States v. Padilla, 18 cr. 454-6, 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020)); see also United States v. Smith Castillo, 21-168-cr (L), 21-172-cr (Con), 2022 WL 3581308, at *1 (2d Cir. Aug. 22, 2022) (district court did not abuse its discretion in concluding "unexpectedly harsh pandemic-related conditions" did not warrant sentence reduction). "If the challenging conditions of confinement caused by the pandemic warranted a sentence reduction here, essentially every

10

inmate who has been in BOP custody at any time since March 2020 would be entitled to a sentence reduction." United States v. Ramirez, 571 F. Supp. 3d 40, 47 (S.D.N.Y. 2021).

Gonzalez claims that "[t]he BOP has been in lockdown for nearly nineteen months" and that visitation and programming have been precluded or significantly limited. (Doc 91 at 19-20, 30-31.) However, in an email he sent to BOP medical staff in March 2022, he said he had "been programming." (Id. at 40.) He also asserts that, at the time of his motion, "all BOP facilities [were] at a level 3, 'Intense Modifications.'" (Id. at 21.) But that is no longer the case, as the vast majority of facilities are operating at the less restrictive levels 1 and 2.[4] Fort Dix, where Gonzalez was incarcerated at the time of his motion, and Lewisburg, where he is currently located, are both operating at Level 2, "Moderate Modifications."[5] Thus, there is no basis to conclude that Gonzalez will "continue to be subjugated to . . . harsh conditions" going forward. (See Doc 91 at 33.)

The cases Gonzalez cites as "considering the conditions of confinement when granting motions for compassionate release" did not find extraordinary and compelling reasons for release based solely on harsh pandemic-era prison conditions. (See Doc 91 at 21.) Rather, the courts emphasized each defendant's unique circumstances that, when viewed in combination, presented extraordinary and compelling circumstances. For example, in Hatcher, the defendant asserted not only harsh prison conditions due to the pandemic but also that she suffered from "substantial fear and anxiety" of death or severe illness. Hatcher, 2021 WL 1535310, at *4. She also stated she was precluded from "accessing important programs that would have provided her with critical mental health and rehabilitative services." Id. Moreover, she was "unable to

---

[4] COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Nov. 14, 2022).
[5] Id.; see also COVID-19 Modified Operations Plan & Matrix, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed Nov. 14, 2022).

11

receive mental health care, drug abuse treatment, and other important services the court believed were "critical to her physical and mental health, and to her ability to reenter society." Id.  In Romero, the defendant had served all but 4 months of the 69 months he was projected to serve. United States v. Romero, 15 cr. 445-18, 2021 WL 1518622, at *4 (S.D.N.Y. Apr. 16, 2021). Finally, in Quinones, the court noted that lockdowns and restrictions at the prison during the pandemic were "relevant," but emphasized it was "most relevant" that the defendant put forth "overwhelming evidence of . . . total rehabilitation." United States v. Quinones, 00 cr. 761-1, 2021 WL 797835, at *2 (S.D.N.Y. Feb. 27, 2021).  The defendant's underlying health conditions, the many letters from the defendant's family, friends, and fellow inmates, and the fact that he had already served more than two decades in prison were also important to the court's decision.  Id. at *2-3.

       The additional, influential circumstances in those cases are not present here. Gonzalez has received medical treatment while in prison, including prescription anxiety and blood pressure medication, a back brace, and the CPAP machine he requested.  Moreover, Gonzalez has well over 4 months left on his sentence – and the time he has already served does not favor his release.  Nor has he not shown "overwhelming evidence" of rehabilitation.  Without diminishing the fact that Gonzalez's time in prison during the pandemic has surely been difficult, his circumstances do not rise to the level of "extraordinary and compelling" reasons to grant his early release.

II.      The Section 3553(a) Factors Independently Counsel Against Granting Gonzalez's Motion.

       Even if Gonzalez had shown extraordinary and compelling reasons warranting his early release, the factors set forth in section 3553(a) would nonetheless counsel against granting

his motions.  He committed a serious crime involving an extremely dangerous drug: he arranged and facilitated the sale of one kilogram of fentanyl.  (Doc 73 at 12-13.)  The CDC reports that "[o]ver 150 people die every day from overdoses related to synthetic opioids like fentanyl," which is up to 50 times stronger than heroin and 100 times stronger than morphine.[6]  Gonzalez's participation in the devastating opioid crisis that continues to plague this country cannot be so easily excused.

Moreover, contrary to Gonzalez's assertion that the pandemic is an "overriding factor under § 3553(a) that was not present at the time of sentencing," (Doc 91 at 31), the Court took the pandemic into account when sentencing him.  Accordingly, the conditions occasioned by the pandemic were not "more arduous than the Court intended or anyone would have anticipated."  (See Doc 91 at 31.)  At the time of sentencing, the Court expressly acknowledged that Gonzalez's BMI placed him at an elevated risk if he contracted COVID-19, as well as the limitations placed on individuals incarcerated during the pandemic.  (Doc 73 at 14-15.)  Accordingly, the prison conditions Gonzalez has experienced and the health risks he faces do not now tip the section 3553(a) scale in his favor.

Gonzalez also argues that his rehabilitation while in custody weighs in favor of his motion.  (Doc 91 at 30-31.)  But his rehabilitation, either alone or in combination with his other circumstances, does not justify his early release.  See Brooker, 976 F.3d at 237-38; United States v. Corin, 10 cr. 391-64, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020); United States v. Bennett, 15 cr. 95, 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022); United States v. Salgado, 15-cr-681, 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (stating that rehabilitation and a "spotless disciplinary record" do not warrant sentence reduction because "[t]o find

---

[6] Fentanyl Facts, Ctrs. for Disease Control & Prevention, cdc.gov/stopoverdose/fentanyl/index.html (last accessed Nov. 14, 2022).

otherwise would convert the process for obtaining a compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions," contrary to Congress's intent).

Consideration of all relevant factors led the Court to impose a sentence of 48 months – 39 months below the bottom end of the advisory Guidelines range. The calculus remains unchanged. Releasing Gonzalez now, or any time prior to his projected release date, would undermine the seriousness of his crime, the "serious need to deter others" from committing similar crimes in the future, and the need for just punishment. He received the sentence that was, and continues to be, appropriate in light of section 3553(a). The Court thus concludes that the applicable section 3553(a) factors serve as an independent basis for denying Gonzalez's motion.

CONCLUSION

The Court has considered Gonzalez's medical conditions, the ongoing COVID-19 pandemic, Gonzalez's vaccination status, the prison conditions he has experienced, the manageable status of COVID-19 at the Lewisburg facility, his rehabilitation, the length of time he has served, and the medical treatment he has received and can continue to receive while incarcerated. Viewing all circumstances in combination and in isolation, and considering the section 3553(a) factors, the Court concludes that Gonzalez has not demonstrated "extraordinary and compelling" reasons to reduce his sentence that was 39 months below the low end of the advisory Guidelines range. His motion is therefore DENIED. The Clerk is directed to terminate the motion. (Doc 91.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
November 14, 2022

15